Richard L. GARRISON, M.D.,
Appellant (Plaintiff),

v.

BOARD OF TRUSTEES OF MEMORIAL HOSPITAL OF LARAMIE COUNTY, WYOMING, Appellee (Defendant).

No. 89–200.

Supreme Court of Wyoming.

July 19, 1990.

Daniel E. White of Vines, Gusea & White, P.C., Cheyenne, for appellant.

* Chief Justice at time of oral argument.

Gregory C. Dyekman of Dray, Madison & Thomson, P.C., Cheyenne, for appellee.

Before CARDINE, C.J.*, and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

CARDINE, Chief Justice.

This appeal addresses the propriety of the appellee's, Board of Trustees of Memorial Hospital of Laramie County (Trustees), denial of appellant's, Richard L. Garrison, M.D., application for appointment to the medical staff at Memorial Hospital (Hospital). The Trustees denied Dr. Garrison's application on November 4, 1988. On December 5, 1988, Dr. Garrison filed a complaint in the district court seeking declaratory, monetary and injunctive relief. The district court upheld the decision of the Trustees and, on appeal, Dr. Garrison challenges that order.

We affirm.

### ISSUES

Dr. Garrison states the issues to be:

"I. Whether the appellant was denied due process of law by virtue of appellee's consideration of his medical competency where the appellant was systematically precluded from developing a record on that issue.

"II. Whether the trial court erred in relying upon the fact that appellant has not held obstetrical privileges since 1985 as a justification for its finding that the appellee's conduct was not arbitrary or capricious."

The Trustees summarize the case in one issue:

"I. Whether the decision of the Board of Trustees of Memorial Hospital of Laramie County to deny appellant's application for appointment to the medical staff was arbitrary, capricious or without foundation in fact."

## BACKGROUND

On May 26, 1988, Dr. Garrison submitted an application for appointment to the medical staff of the Hospital. He used a form supplied by the Hospital which provides:

"I hereby apply for appointment to the Medical Staff of Memorial Hospital of Laramie County. I understand and agree that I, as an applicant for Medical Staff membership, have the obligation to produce adequate information for proper evaluation of my professional competence, character, ethics, physical and mental health and other qualifications, and for resolving any doubts about such qualifications.

"I hereby authorize all hospitals, medical institutions or organizations, my references, personal physicians, employers, business and professional associates and governmental agencies to release to the Hospital and its Medical Staff information and records for evaluation of my professional, ethical and physical qualifications for membership on the Staff and practice in the Hospital.

"I hereby release from liability all representatives of the Hospital and its Medical Staff for their acts performed in good faith and without malice in connection with evaluating my application and my credentials and qualifications, and release from liability any and all individuals and organizations who provide information to the Hospital or its Medical Staff, in good faith and without malice, concerning my qualifications for staff appointment and clinical privileges. I hereby consent to the release of such information.

"I fully understand that any significant misstatements in or omissions from this application constitute good and sufficient cause for denial of appointment or cause for summary dismissal from the Medical Staff. All information submitted by me in this application is true to my best knowledge and belief.

"If I am granted membership on the Medical Staff, I agree to abide by its Bylaws, Rules and Regulations and those of the Governing Board of the Hospital. I understand that initial and continued Staff membership are dependent upon professional competence and ethical practice.

"Richard Garrison MD
Signature
05/26/88
Date"

Dr. Garrison completed the application form. In answer to the question: "D. Have your privileges at any hospital ever been suspended, diminished, revoked or not renewed," he answered "no." [1] In response to a routine inquiry to former sites of medical practice, the Hospital received a letter from the medical director of Thomas Memorial Hospital, South Charleston, West Virginia. The letter contained the following passage:

"Concerns over his obstetrical practice prompted a summary suspension of his obstetrical privileges effective on September 16, 1985. Doctor Garrison then requested that obstetrical privileges be deleted from his clinical privileges. In view of this request, Doctor Garrison was notified by letter dated December 6, 1985, that the summary suspension had been lifted."

The record also contains a letter from Dr. Garrison to Thomas Memorial Hospital, dated December 13, 1985, in which he resigned from the medical staff of that hospital.

At the hearing before the Medical Staff Joint Hearing Committee of Memorial Hospital, Dr. Garrison explained at length his reasons for answering "no" to the question at issue. He explained that he felt any questions about his competence had been decided in his favor and that he understood that his settlement of the issue with Thomas Memorial Hospital included an agreement that the action against his privileges

---

1. If a false answer, it proves again one of Mark Twain's adages: "One of the most striking differences between a cat and a lie is that a cat has only nine lives." Twain, *Pudd'nhead Wilson,*

*Pudd'nhead Wilson's Calendar,* Ch. 1 (1894), as quoted in Bartlett, *Familiar Quotations,* p. 624:16 (Little, Brown and Co.1980).

had been totally nullified as though it had never happened. The record also contains a letter to the Hospital from John W. Traubert, M.D., Associate Dean for Student and Curricular Affairs, School of Medicine, West Virginia University. He had conducted a review, per request of Thomas Memorial Hospital, concerning the quality of obstetrical care rendered by Dr. Garrison. Dr. Traubert concluded that Dr. Garrison's care "was above reproach in all respects." Dr. Traubert went on to express his opinion that Dr. Garrison's problems at Thomas Memorial Hospital were precipitated by that hospital's aversion to indigent patients (Dr. Garrison had a "fair percentage" of such cases and was the only doctor in the county that would deliver indigent patients) and because of Dr. Garrison's involvement in "pro-life" political activities. Dr. Traubert could not confirm that these were the motivations for Thomas Memorial Hospital's action against Dr. Garrison; but, he concluded, "it was clear to me that honest scientific review of patient care was not the motive."

By letter dated August 23, 1988, the Executive Committee of the Hospital (as well as the Credentials Committee) informed Dr. Garrison that it would recommend to the Trustees that his application be denied because of his answer of "no" to item D, *supra*. Dr. Garrison was also informed of his right to a hearing before the Joint Hearing Committee. A hearing was conducted at Dr. Garrison's request on September 13, 1988. By letter dated September 23, 1988, Dr. Garrison was informed that the Joint Hearing Committee would recommend denial of Dr. Garrison's application to the Trustees. Dr. Garrison was given notice by letter dated October 18, 1988, that the Trustees would provide an appellate review of the Joint Hearing Committee's decision. That hearing was conducted on October 31, 1988, and by letter dated November 4, 1988, the Trustees informed Dr. Garrison that they affirmed the decision of the Joint Hearing Committee saying:

"The Board [of Trustees] has limited its consideration in this matter in the same way the Joint Hearing Committee, Executive Committee and Credentials Committee previously did. The Board does not believe that it can or should attempt to pass judgment upon the merits of the summary suspension you suffered in West Virginia. Regardless of merit or lack of merit of that action, the fact remains that a summary suspension did occur and that your privileges were not renewed at that hospital. Both of these events should have been reported on your Medical Staff Application to Memorial Hospital of Laramie County, but were not.

"The Board has determined that falsification of one or more answers on your Staff Membership Application raises legitimate concerns over your veracity and professional ethics.

"After reviewing the evidence, the Board has determined that a decision of the Joint Hearing Committee to deny your staff membership application on the basis of the falsification of one or more answers on your application is supported by sufficient evidence. You have been given ample opportunity to present evidence to the Joint Hearing Committee and to the Board. The Board believes that all procedures set forth in the Medical Staff By–Laws have been correctly followed with respect to the matter of your application for staff membership. The explanations and reasoning given by you for providing information on your Medical Staff Application which was factually false were insufficient to justify that false answer. Providing false information to the hospital with respect to important matters such as medical staff privileges is a sufficient basis for the denial of your medical staff application."

We note also that the record contains an application for medical staff privileges at Putnam General Hospital, Hurricane, West Virginia, which is dated July 22, 1987. In that application, Dr. Garrison answered a similar question "yes." At the hearing before the district court, Dr. Garrison explained that he had answered that way even though he had been advised by Putnam General Hospital personnel that he

could answer the question "no." It was, at least in part, a result of discussions with these Putnam General Hospital personnel, and the fact that the problem at Thomas Memorial Hospital had not been reported to the West Virginia State Board of Medical Examiners, that he reached the conclusion that he could rightfully answer such questions "no" in the future.

Dr. Garrison filed his civil action in the district court seeking declaratory, monetary and injunctive relief on December 5, 1988. After a trial to the court, the district judge issued an opinion letter in which he found the issue before him to be "not whether Dr. Garrison had a good faith belief that he was never suspended, but rather whether the Hospital undertook to conduct itself in a matter [manner] which can be characterized as 'arbitrary, capricious, or without foundation of fact.'" The district court opined that the controversy may have been over an "honest mistake" and that there was "room for an attitude of understanding," but the court concluded that the discretion was in the hands of the Trustees and not the court. The district judge determined that the Trustees had not abused their discretion and their decision was not capricious.

## DISCUSSION

█ We have held that one of the primary purposes of a hospital's medical staff committee is to ensure the dispensation of quality medical care. *Greenwood v. Wierdsma*, 741 P.2d 1079, 1089 (Wyo.1987). Moreover, the right to practice medicine, while it is a property right, is conditional and subject to the police power of the state. *Paravecchio v. Memorial Hospital of Laramie County*, 742 P.2d 1276, 1283 (Wyo. 1987). We have recognized that it is improper for any court to substitute its judgment for that of the board of trustees concerning management and operation of a hospital. *Gonzales v. Personal Collection Service*, 494 P.2d 201, 206 (Wyo.1972); and *see* W.S. 18–8–104(a) (1989 Cum.Supp.). A hospital board of trustees has the power to make reasonable rules and regulations defining the conditions under which physi-

cians might avail themselves of the facilities of the hospital. *Board of Trustees of Memorial Hospital of Sheridan County v. Pratt*, 72 Wyo. 120, 262 P.2d 682, 688–89 (1953). A physician does not have an unqualified right, constitutional or otherwise, to practice his profession in a public hospital; but a physician may not be excluded by rules, regulations or acts of the hospital's governing authorities which are unreasonable, arbitrary, capricious, or discriminatory. *Id.;* Annotation, *Exclusion of or Discrimination Against Physician or Surgeon by Hospital*, 37 A.L.R.3d 645, 666, § 4 (1971); 2 *Shepard's Causes of Action* 597, § 11 (1983); McCall, *A Hospital's Liability for Denying, Suspending and Granting Staff Privileges*, 32 Baylor L.Rev. 175, 188–201 (1980); 40 Am.Jur.2d, *Hospitals and Asylums*, § 10 (1968).

In reviewing a decision of a public hospital to refuse to grant or to terminate staff privileges of a physician, whether the review is conducted in the district court or in this court, the applicable standard of review is one which accords great deference to a hospital's decision. That review is limited to a determination of whether the exclusion was made on a rational basis, supported by substantial evidence, in accordance with reasonable hospital bylaws, and was not discriminatory, arbitrary, or capricious. We accord deference to the decisions of hospital trustees because in making such decisions they are placed between the "rock" of answering to actions, such as Dr. Garrison's, and the "hard place" of ensuring, as best they can, the avoidance of actions for negligence in selection and appointment of staff. *Lapidot v. Memorial Medical Center*, 144 Ill.App.3d 141, 98 Ill.Dec. 716, 720, 494 N.E.2d 838, 842 (1986); *see* Annotation, *Hospital's Liability for Negligence in Selection or Appointment of Staff Physician or Surgeon*, 51 A.L.R.3d 981 (1973).

Dr. Garrison asserts that he was denied due process of law because the Trustees considered his medical competency despite the fact that he was systematically precluded from developing a record on that issue. We have carefully reviewed the evidence summarized above and can only conclude

that the Trustees did not consider evidence of medical competency in reaching their decision to sustain the recommendation that Dr. Garrison be denied hospital privileges. To the extent that subject was discussed, it was largely at the behest of Dr. Garrison and incidental to considering the falseness of his answer as it related to his summary suspension from obstetrical privileges at Thomas Memorial Hospital.

As a second issue, Dr. Garrison asserts that the district court erred in relying on the fact that he had not held obstetrical privileges since 1985 as a justification for its finding that the Trustees' conduct was not arbitrary or capricious. We have likewise carefully read the district court's opinion letter, and we are unable to conclude that its decision was premised, even in part, upon the fact that Dr. Garrison had not held obstetrical privileges since 1985. The district court's discussion was limited to one which noted that fact, along with many others, to reach a conclusion that Dr. Garrison had deliberately answered the disputed question "no," when it should have been answered "yes."

Moreover, the review accorded Dr. Garrison in the district court was no broader or greater than the review he receives here. So far as review of the reasonableness of the regulation which Dr. Garrison offended, and the soundness of the decision ultimately reached by the Trustees is concerned, those matters are fully reviewed in this court without any deference being given to the intermediate decision of the district court. The review process of this case, a declaratory judgment action in the district court, does not differ significantly from the review process under the Administrative Procedure Act. We hold that the Trustees' policy, which provides that medical staff privileges may be denied if the application contains significant misstatements or omissions, is reasonable and non-discriminatory. *Lapidot v. Memorial Medical Center*, 98 Ill.Dec. at 723, 494

N.E.2d at 845; *Dunbar v. Hospital Authority of Gwinnett County*, 227 Ga. 534, 182 S.E.2d 89, 92 (1971); and see *Bucknum v. Johnson*, 21 Wyo. 26, 127 P. 904, 907–08 (1912).

We think it relevant to note that under W.S. 33-26-402(a)(i), the Wyoming State Board of Medical Examiners may refuse to grant, renew, revoke, suspend or restrict a license or take other disciplinary action, where a physician obtains, renews or attempts to obtain or renew a license by fraud or misrepresentation. Although it played no part in the decisions below, and it plays no part in our decision, we note that Dr. Garrison was officially reprimanded by the Wyoming State Board of Medical Examiners on June 6, 1989, for supplying a negative answer to a similar question on his license application. It follows that if a license to practice may be denied on these grounds, then the privilege of serving on a hospital medical staff may be denied for the same reason. See 61 Am.Jur.2d, *Physicians, Surgeons, and Other Healers*, § 81 (1981). Concealment of material facts may, and did under the circumstances of this case, constitute a fraud on the Trustees. *Meeker v. Lanham*, 604 P.2d 556, 558 (Wyo.1979); *Steadman v. Topham*, 80 Wyo. 63, 338 P.2d 820, 827 (1959); see *Bucknum v. Johnson*, 127 P. at 907–08.

We hold that the decision of the Trustees was not arbitrary or capricious, rather it was based on substantial evidence that Dr. Garrison's application for medical staff privileges contained significant misstatements or omissions.

The order of the district court dismissing the complaint with prejudice is affirmed.