FILED
United States Court of Appeals
Tenth Circuit

**March 16, 2009**

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENNTH CIRCUIT

---

JAMES F. RIPLEY, D.D.S., M.H.A.,

     Plaintiff-Appellant,

v.

WYOMING MEDICAL CENTER, INC., a Wyoming corporation; JAMES ANDERSON, M.D.; JOHN D. BAILEY, M.D.; STEVE CHADDERDON; THOMAS CUNNINGHAM, M.D.; MARK DOWELL, M.D.; KEN EICKOFF; PAM FULKS; BILL McDOWELL; MARK McGINLEY, M.D.; SUSIE McMURRY; STEVEN ORCUTT, M.D.; DIANE PAYNE; MIKE REID; CRAIG SMITH; LOUIS STEPLOCK, M.D.; WERNER STUDER, M.D.; JAY A. SWEDBERG, M.D., individually,

    Defendants-Appellees.

No. 08-8015

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. No. 06-CV-091-J)**

---

Stephen H. Kline, Kline Law Office, P.C., Cheyenne, Wyoming, for Plaintiff-Appellant.

Scott E. Ortiz, (Stuart R. Day, P. Craig Silva and Ryan J. Schwartz on the brief), Williams, Porter, Day & Neville, P.C., Casper Wyoming, for Defendants-Appellees.

Before **BRISCOE, EBEL,** and **HARTZ**, Circuit Judges.

**BRISCOE**, Circuit Judge.

Plaintiff-Appellant James F. Ripley ("Dr. Ripley") appeals the district court's order granting summary judgment in favor of Defendants-Appellees on his 42 U.S.C. § 1983 due process claim. Defendants-Appellees are former or current administrators or board members of Wyoming Medical Center, along with Wyoming Medical Center itself, and are hereinafter collectively referred to as "Wyoming Medical Center." Wyoming Medical Center's denial of Dr. Ripley's membership to the medical staff was the genesis of Dr. Ripley's claim.[1] We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I

Dr. Ripley is a dentist, with additional training in anesthesiology and as an oral and maxillofacial surgeon. He does not hold an M.D. or D.O. degree, and is licensed through the Wyoming Board of Dentistry. Dr. Ripley moved to Wyoming and began practicing with two other oral surgeons. Prior to moving to

---

[1] Dr. Ripley's complaint also alleged violations of sections 6 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, and sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2. The district court granted summary judgment to Wyoming Medical Center on these antitrust claims in a separate order and Dr. Ripley does not appeal that order.

Wyoming, Dr. Ripley practiced the specialty of oral and maxillofacial surgery and received admitting privileges in many areas of the United States.

Wyoming Medical Center's medical staff bylaws have qualification requirements for membership, which state that only "physicians" may be members of the medical staff. A "physician" is defined as a person holding an M.D. or D.O. degree. Wyoming Medical Center's bylaws also state that only members of the medical staff may have admitting privileges. As a result, allied health professionals[2] are not permitted by the bylaws to independently admit patients or perform histories and physicals,[3] although they can receive clinical privileges at the hospital. The bylaws also provide that, unlike a member of the medical staff, an allied health professional's clinical privileges may be terminated at any point by the chief of staff, the executive committee, or the administration of the hospital without a hearing. Allied health professionals cannot be a member of committees of the medical staff or participate in quality of care or peer review issues.

---

[2] An allied health professional is an individual who has received specialized training in some area of the medical field. Taber's Cyclopedic Medical Dictionary 66 (16th ed. 1989).

[3] A "history and physical" is the starting point for an inpatient's stay in a hospital. It is the written document that details the patient's chief complaint and other pertinent history, as well as the physical examination of the patient, both of which are precursors to admission. See Taber's Cyclopedic Medical Dictionary, *supra* note 2, at 835 (defining "history"); id. at 1397 (defining "physical examination").

3

Wyoming Medical Center allowed Dr. Ripley to apply for clinical privileges as an allied health professional. On his application for privileges, Dr. Ripley wrote in longhand that he was applying for "admission H&P [history and physical]" privileges. Aplt. App. at 412-13, 415. Dr. Ripley was granted surgical privileges by Wyoming Medical Center, and his application was approved "as requested." Id. at 334. It is disputed whether Dr. Ripley was given full admitting and history and physical privileges with his grant of clinical privileges. For several months after Dr. Ripley was granted surgical privileges, however, he admitted his own patients and performed his own histories and physicals.

About a year after Dr. Ripley was granted privileges, Dr. MacGuire, the chief of surgery at Wyoming Medical Center, wrote to Dr. Ripley and informed him that he did not have admitting privileges because he was not a member of the medical staff. A subsequent meeting of the trauma committee involved a discussion of Dr. Ripley's privileges, and a vote that only general surgeons and family practitioners should be allowed to admit trauma patients. Dr. Ripley believed Dr. MacGuire had wrongfully canceled his privileges, and he began to seek changes to the bylaws to allow him membership and privileges equivalent to those of physicians. Shortly thereafter, Dr. Ripley was informed that the medical staff was not interested in pursuing changes to the bylaws.

Dr. Ripley spent periods of the next year and a half lobbying for changes to the bylaws. Different committees within Wyoming Medical Center considered

4

Dr. Ripley's proposed bylaws changes, but ultimately recommended no change, based on the belief that it would be better for patient care to have physician oversight for oral surgeons. Wyoming Medical Center informed Dr. Ripley that if he needed to admit a patient and have someone sign off on a history and physical, Wyoming Medical Center had twenty-four hour physician coverage for that purpose. Through this process, a medical doctor would be present to address any medical problems associated with Dr. Ripley's patients, which may extend beyond jaw or maxillofacial problems. Dr. Ripley ultimately brought the present action, asserting in part that Wyoming Statute § 35-2-113 gave him a property right in membership to the medical staff of the Wyoming Medical Center and that the Wyoming Medical Center had deprived him of that property right without due process.

## II

### *Standard of Review*

We review the district court's summary judgment decision *de novo*, applying the same legal standard used by the district court. ClearOne Commc'ns, Inc. v. Nat'l Union Fire Ins. Co., 494 F.3d 1238, 1243 (10th Cir. 2007). Under this standard, summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'genuine' if the

5

evidence allows a reasonable jury to resolve the issue either way and is 'material' when it is essential to the proper disposition of the claim." Haynes v. Level 3 Commc'ns, 456 F.3d 1215, 1219 (10th Cir. 2006) (internal quotation omitted). On an appeal from a motion for summary judgment, we construe all factual inferences in favor of the party against whom summary judgment was entered. NISH, Inc. v. Rumsfeld, 348 F.3d 1263, 1266 (10th Cir. 2003). In addition, we review the district court's interpretation and determination of state law *de novo*. Freightquote.com, Inc. v. Hartford Cas. Ins. Co., 397 F.3d 888, 892 (10th Cir. 2005).

*Property Interest in Medical Staff Membership*

Title 42 U.S.C. § 1983 creates a private right of action against any person who, under color of state law, deprives another individual of "any rights, privileges or immunities secured by the Constitution and laws."[4] "To set forth an actionable procedural due process claim, a plaintiff must demonstrate: (1) the deprivation of a liberty or property interest and (2) that no due process of law was afforded." Stears v. Sheridan County Mem'l Hosp. Bd. of Trs., 491 F.3d 1160,

---

[4] To bring a successful action under § 1983, a plaintiff must show state action. Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1447-48 (10th Cir. 1995). The district court found that Wyoming Medical Center was a state actor and Dr. Ripley urges us in his opening brief to affirm this portion of the district court's order. Aplt. Br. at 17-21. Wyoming Medical Center does not address the state action issue and we likewise do not address it, as it is unnecessary to our resolution of Dr. Ripley's appeal.

6

1162 (10th Cir. 2007) (citing Hennigh v. City of Shawnee, 155 F.3d 1249, 1253 (10th Cir. 1998)). "'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" Id. at 1163 (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)). "Courts must look to existing rules or understandings that stem from an independent source such as state law to define the dimensions of protected property interests." Id. (quoting Setliff v. Mem'l Hosp. of Sheridan County, 850 F.2d 1384, 1395 (10th Cir. 1988)).

Dr. Ripley contends that Wyoming Statute § 35-2-113 gives him a property interest in membership to the medical staff of Wyoming Medical Center. Section 35-2-113 states, in its entirety:

> Any hospital owned by the state, or any hospital district, county or city thereof, and any hospital whose support, either in whole or in part, is derived from public funds, shall be open for practice to doctors of medicine, doctors of osteopathy, doctors of chiropractic, doctors of dentistry and podiatrists, who are licensed to practice medicine or surgery, chiropractic, dentistry or podiatry in this state.
>
> Provided, however, that these hospitals by appropriate bylaws shall promulgate reasonable and uniform rules and regulations covering staff admissions and staff privileges.
>
> Admission shall not be predicated solely upon the type of degree of the applicant and the governing body shall consider the competency and character of each applicant.

Wyo. Stat. Ann. § 35-2-113.

7

There is no question that Wyoming Medical Center is a hospital whose support is derived from public funds, and that section 35-2-113 is broadly applicable.[5] The parties' dispute centers on the statute's further interpretation. Dr. Ripley contends that as a "doctor of dentistry," section 35-2-113 requires that Wyoming Medical Center be "open for practice" without "solely" relying on his "type of degree," and that Wyoming Medical Center must instead "consider the competency and character of each applicant." Dr. Ripley then argues that two cases "clearly establish" that he has a property interest in membership to the medical staff of Wyoming Medical Center, citing Paravecchio v. Mem'l Hosp. of Laramie County, 742 P.2d 1276 (Wyo. 1987), overruled in part on other grounds by Torres v. Wyoming, 95 P.3d 794, 796 (Wyo. 2004), and Garrison v. Bd. of Trs. of Mem'l Hosp. of Laramie County, Wyo., 795 P.2d 190 (Wyo. 1990). Aplt. Br. at 13-14.

Dr. Ripley is correct that the Wyoming Supreme Court has addressed similar issues that bear upon the same subject matter addressed by section 35-2-113. The specific holdings of these cases, however, do not support Dr. Ripley's claim. In Paravecchio, the Wyoming Supreme Court held that, although the right

_____

[5] Wyoming Medical Center is a corporate organization operating under an operating lease agreement with the local county. The local county owns the physical facilities used by the hospital, and the hospital receives funds from the county. In exchange, Wyoming Medical Center, through the operating lease agreement, agrees to provide indigent care to the county.

8

to practice medicine was a property right, it was a conditional property right, and under rational basis review, the state had a legitimate interest in regulating the healthcare profession. 742 P.2d at 1282-83. Paravecchio did not specifically address section 35-2-113. In Garrison, the Wyoming Supreme Court again generally stated:

> We have held that one of the primary purposes of a hospital's medical staff committee is to ensure the dispensation of quality medical care. Moreover, the right to practice medicine, while it is a property right, is conditional and subject to the police power of the state. We have recognized that it is improper for any court to substitute its judgment for that of the board of trustees concerning management and operation of a hospital. A hospital board of trustees has the power to make reasonable rules and regulations defining the conditions under which physicians might avail themselves of the facilities of the hospital. A physician does not have an unqualified right, constitutional or otherwise, to practice his profession in a public hospital; but a physician may not be excluded by rules, regulations or acts of the hospital's governing authorities which are unreasonable, arbitrary, capricious, or discriminatory.
>
> In reviewing a decision of a public hospital to refuse to grant or to terminate staff privileges of a physician, whether the review is conducted in the district court or in this court, the applicable standard of review is one which accords great deference to a hospital's decision. That review is limited to a determination of whether the exclusion was made on a rational basis, supported by substantial evidence, in accordance with reasonable hospital bylaws, and was not discriminatory, arbitrary, or capricious. We accord deference to the decisions of hospital trustees because in making such decisions they are placed between the "rock" of answering to actions, such as [the plaintiff physician's], and the "hard place" of

9

> ensuring, as best they can, the avoidance of actions for
> negligence in selection and appointment of staff.

795 P.2d at 193 (internal citations omitted) (emphasis added). In Garrison, the court concluded that the defendant hospital had not abused its discretion in denying hospital privileges to the plaintiff physician based on the physician's false answer to an application question. The court did not address section 35-2-113 in its analysis. Id. at 193-94.

Neither Paravecchio nor Garrison is specifically on point, as neither addresses section 35-2-113 directly, or a procedural due process claim based on section 35-2-113. However, a case from this circuit, Stears v. Sheridan County Mem'l Hosp. Bd. of Trs., 491 F.3d 1160, 1162 (10th Cir. 2007), briefly addresses section 35-2-113 along with a procedural due process claim brought in a context similar to the case before us. In Stears, the plaintiff radiologist filed a procedural due process claim against a hospital based on the hospital's entry into an exclusive contract with another radiologic services provider, thereby excluding from the hospital's radiology department any radiologist who was not associated with the contract provider. 491 F.3d at 1161. In addition to his procedural due process claim, the plaintiff filed a claim under section 35-2-113 and a breach of contract claim based on the alleged violation of the hospital's bylaws. Id. The plaintiff alleged that, although he remained a member of the medical staff at the hospital, the hospital's exclusive use of its contract provider deprived plaintiff of

10

his procedural due process rights. Id. at 1162.

Regarding the procedural due process claim, we affirmed the district court's determination that if the plaintiff's hospital privileges were the property interest asserted, then "although he may be entitled to this interest, he has not been deprived of it." Id. at 1163 (citing approvingly the district court's analysis). We also affirmed the district court's determination that if the plaintiff's asserted property interest was *the exercise* of his hospital privileges, then the procedural due process claim failed because there was no "legitimate claim of entitlement" to *the exercise* of hospital privileges, when hospital privileges remain intact. Id. The plaintiff based his property interest on the hospital's bylaws' requirement that if "clinical privileges" were "reduced, suspended, or revoked," then the physician must be afforded notice and a hearing if the hospital's action was "deemed adverse." Id. We reasoned that the plaintiff could still vote, hold office, and serve on medical staff committees as a member of the medical staff, and that his inability to exercise his clinical skills at the hospital was not a reflection on his professional competency, indicating that the hospital's actions were not adverse. Id. Regarding section 35-2-113, we noted that the plaintiff's due process claim under the statute failed because the "statute is simply an anti-discrimination statute" and, because the plaintiff's staff privileges were not revoked, section 35-2-113 was not applicable. Id. at 1164.

After review of these cases, we conclude that section 35-2-113 does not

11

provide Dr. Ripley with the property interest he claims, which is membership to the medical staff of Wyoming Medical Center. In fact, the opposite is true. The Wyoming cases state, and Dr. Ripley agrees, that the right to practice medicine at a particular hospital is a conditional property right. Paravecchio, 742 P.2d at 1282-83; Garrison, 795 P.2d at 193. Garrison also states that "great deference" should be given to a hospital's decision regarding staff privileges. 795 P.2d at 193. In our decision in Stears, we concluded section 35-2-113 is not violated when the plaintiff physician still had privileges to practice at the hospital (*i.e.*, "his staff privileges ha[d] not been revoked"), even though the defendant hospital's exclusive contract with other providers reduced the practical value of his privileges. Stears, 491 F.3d at 1164.

Further, reading section 35-2-113 independently of these cases, we conclude that the most the state statute gives Dr. Ripley is a state-law interest in consideration for admission to the medical staff of Wyoming Medical Center. Section 35-2-113's first sentence requires that a state-funded hospital "shall be open for practice" to licensed clinical providers. Wyo. Stat. Ann. § 35-2-113. The statute's second sentence permits "reasonable and uniform rules and regulations covering staff admissions and staff privileges." Id. The statute's final sentence states that "[a]dmission shall not be predicated solely upon the type of degree of the applicant. . . ." Id.

Therefore, at most, section 35-2-113 creates a state-law interest in

12

consideration for admission to the medical staffs of Wyoming public hospitals, with consideration predicated upon an applicant's competency and character, rather than solely upon the type of degree held by the applicant. However, under governing Supreme Court and Tenth Circuit precedent, because this is a procedural right without a mandated outcome, this state-law interest is not protected under the Due Process Clause.

In Town of Castle Rock v. Gonzales, 545 U.S. 748, 764 (2005), the Supreme Court held that "an entitlement to nothing but procedure" cannot serve as the basis for a property right protected by the Due Process Clause:

> The Due Process Clause extends procedural protection to guard against unfair deprivation by state officials of substantive state-law property rights or entitlements; the federal process protects the property created by state law. But Gonzales claims a property interest in a state-mandated process in and of itself. This argument is at odds with the rule that "process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." . . . Just as a State cannot diminish a property right, once conferred, by attaching less than generous procedure to its deprivation, neither does a State create a property right merely by ordaining beneficial procedure unconnected to some articulable substantive guarantee.

Id. at 771 (Souter, J., concurring) (internal citations omitted; emphasis added).

In the wake of Gonzales, this Court considered whether employees of the Colorado Department of Corrections had a protected property interest in "the right to be considered for promotion and transfer according to the standards set forth in the Colorado Constitution and state statutes." Teigen v. Renfrow, 511 F.3d 1072,

13

1080 (10th Cir. 2007).   The Teigen plaintiffs relied on "state constitutional requirements that 'appointments and promotions to offices and employments in the personnel system of the state shall be made according to merit and fitness,'" as well as on statutory provisions providing that "'any person has an equal opportunity to apply and compete for state employment'" and that "'appointments and promotions to positions shall be based on job-related knowledge, skills, abilities, competencies, behaviors, and quality of performance as demonstrated by fair and open competitive examinations.'"  Id. (internal citations omitted).

We held that "none of these provisions of state law create[d] a cognizable property interest for purposes of constitutional due process," precisely because the statutes created entitlements to "nothing but procedure." Id. at 1080, 1081. We explained that "[t]he subtle distinction between the right to be selected for promotion and the right to take part in the promotion process is insufficient to salvage Plaintiffs' due process claims." Id. at 1081.  Most critically, we went on to hold that "[e]ven assuming state law grants every state employee the right to be fairly considered for promotion, this right is not itself a substantive right, but rather a vehicle for arriving at the ultimate promotion decision." Id. (emphasis added).

In Crown Point I, LLC v. Intermountain Rural Electric Association, 319 F.3d 1211, 1216 (10th Cir. 2003), a pre-Gonzales decision, this Court explained how we may determine whether an entitlement to procedure also comprises a

14

substantive entitlement protected by due process:

> A property interest exists if discretion is limited by the procedures in question, <u>that is, whether the procedures, if followed, require a particular outcome</u>. However, where the governing body retains discretion and the outcome of the proceeding is not determined by the particular procedure at issue, no property interest is implicated.

<u>Id.</u> at 1217 (emphasis added). Under Wyo. Stat. Ann. § 35-2-113, there is no guarantee that Dr. Ripley will be admitted to the medical staff after consideration on the basis of his character and competence; the procedure mandated by the statute does not require a particular outcome. Therefore, any state-law interest he has in that consideration does not constitute a property interest protected by the Due Process Clause.

We need not reach the question of whether due process was afforded to Dr. Ripley, because we have found no deprivation of a property interest. <u>See</u> <u>Stears</u>, 491 F.3d at 1162 (stating that a procedural due process claim first requires deprivation of a property interest). The district court properly applied the summary judgment standards in its order.

### III

We AFFIRM the district court's grant of summary judgment in favor of Wyoming Medical Center.

15