438 S.E.2d 6

**Richard L. GARRISON, M.D., Plaintiff Below, Appellant,**

v.

**HERBERT J. THOMAS MEMORIAL HOSPITAL ASSOCIATION, a West Virginia Corporation, Defendant Below, Appellee.**

No. 21359.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 22, 1993.

Decided Nov. 23, 1993.

Chauncey H. Browning, Charleston, for appellant.

Thomas J. Hurney, Jr., Anthony J. Majestro, Jackson & Kelly, Charleston, for appellee.

McHUGH, Justice:

Richard L. Garrison, M.D. appeals the final order of the Circuit Court of Kanawha County which dismissed with prejudice his complaint against Herbert J. Thomas Memorial Hospital Association (hereinafter "Thom-

as Hospital"). Upon review of this case, we reverse.

## I

Dr. Garrison graduated from the West Virginia University School of Medicine in 1979, and fulfilled his internship and residency requirements at Charleston Area Medical Center and Thomas Hospital. In September of 1982, Dr. Garrison was granted temporary hospital privileges in family practice, pediatrics and obstetrics at Thomas Hospital. He was subsequently granted annual staff privileges for 1983, and his applications for reappointment to Thomas Hospital's associate medical staff were approved for 1984 and 1985.

In August of 1985, Thomas Hospital's medical executive committee requested that the OB–Perinatal–Mortality Committee review Dr. Garrison's obstetrical cases, retrospectively and for a period of one year. The purpose of the review was to consider Dr. Garrison's management of his cases.

The OB–Perinatal–Mortality Committee held a special meeting on September 9, 1985, to disclose the findings of its review. At the meeting, which Dr. Garrison attended, the OB–Perinatal–Mortality Committee recommended to the medical executive committee that Dr. Garrison's obstetrical privileges be suspended. According to the record of the special meeting, the committee believed that Dr. Garrison "does not recognize when he has a high risk patient and is unable to realize when he needs to obtain a formal consultation." The committee's recommendation was summarized on the medical staff committee report as follows:

> The OB–Perinatal–Mortality Committee recommends to the Medical Executive Committee that [Dr. Garrison's] obstetrical privileges be suspended at this time; he needs further training in obstetrics; when he has documentation of further training in an approved obstetrical program and documentation of adequate knowledge of the proper standards of care in obstetrics, his privileges be reevaluated at that time.

The medical executive committee then instructed the director of the medical staff, Dr. Rodney Dean, to request that the credentials committee investigate Dr. Garrison's management of those obstetrical cases for which he was summarily suspended. The medical executive committee also directed Dr. Dean to notify Dr. Garrison of the suspension of his obstetrical privileges pending the investigation by the credentials committee. Dr. Garrison was apparently notified of his suspension on September 17, 1985.

Following its investigation, the credentials committee did not concur with the recommendation of the OB–Perinatal–Mortality Committee. The medical executive committee, however, rejected the findings of the credentials committee, and instead recommended that Dr. Garrison's obstetrical privileges be removed. Dr. Garrison was notified in writing by James W. Hubbell, President and Chief Executive Officer of Thomas Hospital, of the medical executive committee's action.

Upon receiving notification of the executive committee's action, Dr. Garrison appealed the committee's decision and requested that a hearing be held. Thereafter, Mr. Hubbell advised Dr. Garrison in writing that his suspension was based upon the medical executive committee's opinion that his practice in the field of obstetrics did not meet the standard of care required of physicians in this area of medicine. He further informed Dr. Garrison that a hearing would be held on November 13, 1985.

A preliminary hearing on Dr. Garrison's appeal was held on November 20, 1985. Dr. Garrison and Thomas Hospital agreed at the preliminary hearing that the evidentiary hearings would begin on December 16, 1985.

In November of 1985, Thomas Hospital requested that John W. Traubert, M.D., professor and chairman of family practice at West Virginia University, "conduct an independent review of the quality of obstetrical care rendered by Dr. Garrison[.]" Dr. Traubert, in a report dated August 15, 1988,[1]

---

1. It is not clear as to why Dr. Traubert's report was submitted so many years after Dr. Garrison left Thomas Hospital.

found that Dr. Garrison's "care was above reproach in all respects."

Dr. Garrison asserts that on December 4, 1985, he met with Mr. Hubbell to discuss the upcoming evidentiary hearings and the lawsuit he was considering initiating against Thomas Hospital as a result of his suspension. Dr. Garrison contends that Mr. Hubbell agreed that if Dr. Garrison would not initiate legal proceedings against the hospital, then Thomas Hospital would: (1) reinstate his obstetrical privileges; (2) expunge the record of his suspension; and (3) not report the suspension to either the West Virginia Medical Licensing Board or any other source inquiring about the suspension. Dr. Garrison represents that, based upon this agreement, he resigned from the medical staff of Thomas Hospital on December 13, 1985.

A few years later, Dr. Garrison applied for appointment to the medical staff at Memorial Hospital in Cheyenne, Wyoming. In response to a question on the application as to whether he had ever been suspended, Dr. Garrison answered "no." *Garrison v. Board of Trustees of Memorial Hospital,* 795 P.2d 190, 191 (Wyo.1990). As part of its consideration of Dr. Garrison's application, Memorial Hospital requested information from Thomas Hospital concerning Dr. Garrison. In a letter dated July 27, 1988, George W. Hogshead, M.D., medical director of Thomas Hospital, advised the president of the medical staff at Memorial Hospital that

> [c]oncerns over his obstetrical practice promoted a summary suspension of his obstetrical privileges effective on September 16, 1985. Doctor Garrison then requested that his obstetrical privileges be deleted from his clinical privileges. In view of this request, Doctor Garrison was notified by letter dated December 6, 1985, that the summary suspension had been lifted.

By letter dated August 23, 1988, the executive committee and the credentials committee

of Memorial Hospital advised Dr. Garrison that it was recommending to the trustees that his application be denied because of his answer of "no" to the question regarding suspension. Dr. Garrison asserts that as a result of the hospital's denial of staff privileges, he was forced to resign from his position as assistant professor at the Cheyenne Family Practice Center at the University of Wyoming. Dr. Garrison ultimately filed an unsuccessful lawsuit against Memorial Hospital for denying his application.

On July 25, 1991, Dr. Garrison filed a lawsuit against Thomas Hospital in the Circuit Court of Kanawha County. Thomas Hospital removed the case to federal court where the district judge granted its motion to dismiss the first five counts of the complaint. The district judge concluded that Dr. Garrison's claims of breach of contract, denial of substantive and procedural due process, and violation of his common-law right to fair procedure were resolved by the alleged agreement at the meeting on December 4, 1985, and thus were barred. The district court then remanded the case with respect to the sixth and seventh counts of the complaint to state court.[2]

In state court, Thomas Hospital moved to dismiss counts VI and VII of the complaint. By order dated October 21, 1991, the circuit court dismissed the complaint with prejudice and concluded that: (1) Dr. Garrison's claims are barred by the immunity provided Thomas Hospital under the West Virginia Peer Review statute, *W.Va.Code,* 30–3C–1, *et seq.;* (2) Dr. Garrison's claims stemming from the December 4, 1985, meeting are unenforceable because the contract is against public policy; and (3) the claim that Thomas Hospital interfered with his prospective business advantage by reporting the suspension is barred by the statute of limitations for defamation actions. Dr. Garrison is now before this Court upon the appeal of that order.

---

**2.** In the sixth count of the complaint, Dr. Garrison avers that Thomas Hospital breached its agreement of December 4, 1985, whereby the hospital allegedly agreed it would expunge the summary suspension from his record, and would not reveal such suspension "to any source making inquiry thereof." In the seventh count, Dr.

Garrison alleges that Thomas Hospital's breach of its agreement with him constituted a "wrongful act of interference with [his] prospective business advantages." Dr. Garrison seeks compensatory and punitive damages under both of these counts.

## II

The first issue presented in this appeal is whether the circuit court erred in concluding that Dr. Garrison's claims against Thomas Hospital are barred by reason of the "Immunity From Liability" provision included in the peer review immunity statutes, specifically, *W.Va.Code*, 30–3C–2(a) [1980].

*W.Va.Code*, 30–3C–2(a) [1980] provides:

(a) Notwithstanding any other provision of law, no person providing information to any review organization shall be held, by reason of having provided such information, to be civilly liable under any law, unless:

(1) Such information is unrelated to the performance of the duties and functions of such review organization, or (2) such information is false and the person providing such information knew, or had reason to believe, that such information was false.

While this Court has not previously had occasion to address the application of *W.Va. Code*, 30–3C–2(a) [1980], we recognized the public policy underlying the immunity from liability provision in *Mahmoodian v. United Hospital Center, Inc.*, 185 W.Va. 59, 404 S.E.2d 750, *cert. denied*, — U.S. —, 112 S.Ct. 185, 116 L.Ed.2d 146 (1991). We observed that "the fact that individuals conducting good-faith health care peer review are statutorily immunized from civil liability for damages evinces a public policy encouraging health care professionals to monitor the competency and professional conduct of their peers in order to safeguard and improve the quality of patient care." *Id.* at 65, 404 S.E.2d at 756.[3] *Accord* syl. pt. 2, *Young v. Saldanha*, 189 W.Va. 330, 431 S.E.2d 669 (1993).

■ Notwithstanding the public policy considerations recognized by this Court in *Mahmoodian*, there are exceptions under the peer review immunity provisions. Under *W.Va.Code*, 30–3C–2(a) [1980], individuals providing information to any review organization may not be shielded from civil liability when they provide information that is: (1) unrelated to the performance of the duties and functions of such review organization; and (2) false, and the person providing such information knew, or had reason to believe, that such information was false. Thus, individuals conducting health care peer review must act in good faith in order to be statutorily immunized from civil liability under *W.Va.Code*, 30–3C–2 [1980]. We emphasize that our holding regarding the exceptions created under *W.Va.Code*, 30–3C–2 [1980] in no way undercuts *Mahmoodian*.

■ Dr. Garrison's contention that Thomas Hospital is not entitled to immunity from liability is based upon the second exception created under *W.Va.Code*, 30–3C–2 [1980]. He maintains that the statements made in Dr. Hogshead's letter to Memorial Hospital were false, and that Dr. Hogshead knew, or had reason to believe, that the information was false. Thomas Hospital contends that Dr. Garrison never challenged the truthfulness of Dr. Hogshead's letter until he filed a petition with this Court,[4] and that he admitted in his application to Putnam General Hospital that his privileges had been suspended. Thomas Hospital further asserts that collateral estoppel bars Dr. Garrison from contesting the truthfulness of the letter because the Supreme Court of Wyoming concluded that the statements in the letter were true.[5]

---

3. We note that the primary issues in *Mahmoodian* related to judicial review of a hospital's decision to revoke, suspend, restrict or to refuse to renew the staff appointment or clinical privileges, and to the scope of that judicial review. We held in syllabus point 1 of *Mahmoodian*:

The decision of a private hospital to revoke, suspend, restrict or to refuse to renew the staff appointment or clinical privileges of a medical staff member is subject to limited judicial review to ensure that there was substantial compliance with the hospital's medical staff bylaws governing such a decision, as well as to ensure that the medical staff bylaws afford basic no-

tice and fair hearing procedures, including an impartial tribunal.

4. We note that, in addition to those allegations stated in note 2, *supra*, Dr. Garrison also alleges under the sixth count of his complaint that the issuance of Thomas Hospital's letter to Memorial Hospital was "improper and wrongful."

5. Thomas Hospital was not a party to the proceeding before the Supreme Court of Wyoming. The primary issue in that case was whether the decision of Memorial Hospital's Board of Trustees to deny Dr. Garrison's application for ap-

Thomas Hospital acknowledges in its brief on appeal that, in order to overcome the hospital's immunity from liability under *W.Va.Code*, 30–3C–2 [1980], Dr. Garrison has to prove that the statements made by Dr. Hogshead in his letter to Memorial Hospital were false, and that Dr. Hogshead knew they were false. This case, however, was dismissed on a motion pursuant to *W.Va. R.Civ.P.* 12(b)(6) before Dr. Garrison had any opportunity to prove any of the facts he has alleged.

■ This Court reaffirmed the standard for reviewing a motion pursuant to *W.Va. R.Civ.P.* 12(b)(6) in syllabus point 2 of *Sticklen v. Kittle*, 168 W.Va. 147, 287 S.E.2d 148 (1981):

'The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' Syl., *Flowers v. City of Morgantown*, [166] W.Va. [92], 272 S.E.2d 663 (1980).

*See also* syl. pt. 3, *Chapman v. Kane Transfer Co., Inc.*, 160 W.Va. 530, 236 S.E.2d 207 (1977), citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957). Moreover, upon appeal of an order granting a motion to dismiss, the plaintiff's allegations must be accepted as true and

construed most favorably to him. Syl. pt. 1, *Wiggins v. Eastern Associated Coal Corp.*, 178 W.Va. 63, 357 S.E.2d 745 (1987); *Harless v. First National Bank in Fairmont*, 162 W.Va. 116, 246 S.E.2d 270 (1978).

We believe that Dr. Garrison has asserted facts in support of his claim which, if proved, would entitle him to relief. Moreover, if Dr. Garrison were to prove that Dr. Hogshead knowingly gave false statements to Memorial Hospital, then the immunity from liability provision under the peer review immunity statutes would not be afforded to Thomas Hospital. Therefore, we conclude that the trial court erred in dismissing the complaint with prejudice based upon the immunity from liability provision under *W.Va.Code*, 30–3C–2(a) [1980].

### III

■ The next issue we must address in this appeal is whether the circuit court erred in determining that the December 4, 1985, agreement was unenforceable on grounds of public policy. Dr. Garrison contends that the December 4, 1985, agreement was a recognition by Thomas Hospital that its disciplinary actions were improper and unlawful.[6] Thomas Hospital asserts that the agreement Dr. Garrison seeks to enforce violates the public policy in favor of full disclosure in providing information to a peer review organization.

pointment to the medical staff was arbitrary, capricious or without foundation in fact. The court determined that the trustee's decision was not arbitrary or capricious because there was "substantial evidence that Dr. Garrison's application for medical staff privileges contained significant misstatements or omissions." *Garrison*, 795 P.2d at 194. The court believed that Dr. Garrison concealed material facts from the trustees. *Id.*

While the defensive use of collateral estoppel may be used to prevent a plaintiff from asserting a claim he or she has previously litigated unsuccessfully against another defendant, the right is not automatic. *Conley v. Spillers*, 171 W.Va. 584, 301 S.E.2d 216 (1983). We recognized certain inquiries a court must make to determine the appropriate application of collateral estoppel in syllabus point 6 of *Conley*:

Whether a stranger to the first action can assert collateral estoppel in the second action depends on several general inquiries: Whether the issues presented in the present case are the

same as presented in the earlier case; whether the controlling facts or legal principles have changed substantially since the earlier case; and, whether there are special circumstances that would warrant the conclusion that enforcement of the judgment would be unfair. The issue before the Wyoming Supreme Court was not whether Dr. Hogshead knowingly gave false information to Memorial Hospital about Dr. Garrison. The court instead based its review upon whether the action of the trustees in denying Dr. Garrison's application was arbitrary or capricious. Therefore, we do not believe that Thomas Hospital can assert collateral estoppel in this action.

6. Dr. Garrison asserts that if the hospital's action was not unlawful and improper, then it would have reported his summary suspension to the medical licensing board. Thomas Hospital, however, contends that whether it reported his suspension to the licensing board has nothing to do with whether the alleged agreement violates public policy.

In support of its argument, Thomas Hospital cites *Walton v. Jennings Community Hospital, Inc.*, 875 F.2d 1317 (7th Cir.1989).

In *Walton*, the Seventh Circuit of the United States Court of Appeals considered, among other things, whether a contract entered into between a physician and a hospital, under which the physician agreed to resign in return for the hospital's agreement to drop disciplinary proceedings against him, violated the public policy underlying the Indiana Peer Review Act. Disciplinary proceedings were instituted against the physician following allegations that he had sexually harassed a staff nurse.[7] The court concluded that the agreement, under which the hospital would have to "paint a misleading picture" of the physician to his prospective employers, violated the public policy behind the peer review statutes "in favor of full disclosure." *Id.* at 1322.

If this Court accepts Dr. Garrison's assertions as true, then the alleged agreement[8] in the case now before us is distinguishable from the contract in *Walton*. Dr. Garrison has asserted that the contract he alleges to have entered into with the hospital was done so for the benefit of the hospital to avoid litigation over his summary suspension, which he contends was an improper and unlawful proceeding. Dr. Garrison maintains that the agreement does not violate the public policy in favor of full disclosure because the hospital agreed not to disclose information that was "inaccurate."

■ Clearly, the public policy in favor of full disclosure encourages individuals to provide "good-faith health care peer review." *Mahmoodian v. United Hospital Center, Inc.*, 185 W.Va. 59, 65, 404 S.E.2d 750, 756, *cert. denied,* —— U.S. ——, 112 S.Ct. 185, 116 L.Ed.2d 146 (1991). Thus, an agreement wherein a hospital agrees not to fully disclose truthful and pertinent information about a physician to a peer review organization would violate the public policy in favor of full disclosure. Conversely, an agreement by a hospital not to disclose information about a physician which is known to be false would not violate the public policy in favor of full disclosure.

Under his agreement with Thomas Hospital, Dr. Garrison alleges that he agreed he would not initiate legal proceedings against the hospital for his unlawful suspension in return for the hospital's agreement to: (1) reinstate his obstetrical privileges; (2) expunge the record of his suspension; and (3) not report the suspension to either the West Virginia Medical Licensing Board or any other source inquiring about the suspension. Therefore, if this Court accepts the allegations of Dr. Garrison with respect to the terms of the agreement with Thomas Hospital as true, which we must do when reviewing an appeal of an order granting a motion to dismiss, then such an agreement would not violate the public policy in favor of full disclosure. Thus, we conclude that the circuit court should not have dismissed Dr. Garrison's complaint with prejudice on the ground that the alleged agreement violated public policy.

## IV

■ The final assignment of error we shall consider is whether the circuit court erred in determining that Dr. Garrison's claims are barred by the one-year statute of limitations set forth under *W.Va.Code*, 55–2–12(c) [1959]. Dr. Garrison asserts that his claim is not for defamation, but for wrongful or tortious interference with his business relationships, and that the statute of limitations applicable to his allegations is two years under *W.Va. Code*, 55–2–12(b) [1959]. He cites *Wilkerson v. Carlo*, 101 Mich.App. 629, 300 N.W.2d 658 (1981). Thomas Hospital maintains that Dr. Garrison's complaint was for defamation, and

---

**7.** During the investigation, three other members of the nursing staff alleged that the physician had sexually harassed them.

**8.** On remand, Dr. Garrison will have to prove that such an agreement existed between him and the hospital, and establish what the terms of that agreement were, before he can show that the hospital breached the agreement. Moreover, in order to show that the agreement does not violate public policy, Dr. Garrison will have to prove that Thomas Hospital agreed not to disclose inaccurate, incomplete, misleading or false information about him to a review organization.

that defamation actions are governed by a one-year statute of limitations.

The causes of action for tortious interference with business relationships and for defamation are distinguishable. We enumerated the essential elements for a claim of tortious interference with business relationships in syllabus point 2 of *Torbett v. Wheeling Dollar Savings & Trust Co.*, 173 W.Va. 210, 314 S.E.2d 166 (1983):

> To establish prima facie proof of tortious interference, a plaintiff must show:
>
> (1) existence of a contractual or business relationship or expectancy;
>
> (2) an intentional act of interference by a party outside that relationship or expectancy;
>
> (3) proof that the interference caused the harm sustained; and
>
> (4) damages.
>
> If a plaintiff makes a prima facie case, a defendant may prove justification or privilege, affirmative defenses. Defendants are not liable for interference that is negligent rather than intentional, or if they show defenses of legitimate competition between plaintiff and themselves, their financial interest in the induced party's business, their responsibility for another's welfare, their intention to influence another's business policies in which they have an interest, their giving of honest, truthful requested advice, or other factors that show the interference was proper.

The elements essential to recovery for defamation were set forth by this Court in syllabus point 1 of *Crump v. Beckley Newspapers, Inc.*, 173 W.Va. 699, 320 S.E.2d 70 (1983): "The essential elements for a successful defamation action by a private individual are (1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury."

An action for defamation is subject to a one-year statute of limitations under *W.Va. Code*, 55–2–12 [1959]. *Padon v. Sears, Roebuck & Co.*, 186 W.Va. 102, 411 S.E.2d 245 (1991).[9] The parties, however, dispute the applicable statute of limitations for tortious interference with a business relationship. While this Court has not specifically stated whether the one-year or the two-year statute of limitations controls actions for tortious interference with business relationships, we have recognized that *W.Va.Code*, 55–2–12 [1959] applies to this cause of action. *Barone v. Barone*, 170 W.Va. 407, 294 S.E.2d 260 (1982).[10]

*W.Va.Code*, 55–2–12 [1959] provides:

> Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

In order to determine what statute of limitations governs an action for tortious interference with business relationships, it is necessary for this Court first to determine the type of interest which is allegedly harmed. Dr. Garrison essentially argues that his right to conduct or pursue his occupation is a property right, and that the two-year statute of limitations applies because he is seeking to recover for damage to his property. Thomas Hospital, however, contends that the essence of Dr. Garrison's claim is for defamation, and that the one-year statute of limitations controls.

Both Dr. Garrison and Thomas Hospital have cited decisions from other jurisdictions supporting their arguments regarding the issue of what type of interest is harmed in an

---

**9.** We recognized, however, in the syllabus of *Padon* that "[i]n defamation actions, the period of the statute of limitations begins to run when the fact of the defamation becomes known, or reasonably should have been known, to the plaintiff."

**10.** We found in *Barone* that the statute of limitation period for actions based on tortious interference with a testamentary bequest was governed by *W.Va.Code*, 55–2–12 [1959].

action for interference with business relationships. *E.g., National Association for the Advancement of Colored People v. Overstreet,* 221 Ga. 16, 142 S.E.2d 816 (1965), *cert. dismissed,* 384 U.S. 118, 86 S.Ct. 1306, 16 L.Ed.2d 409 (1966) (Person's business is property, and a person is entitled to have such property protected from tortious interference by third person who, in interfering, is not acting in exercise of some right); *Wilkerson v. Carlo,* 101 Mich.App. 629, 300 N.W.2d 658 (1980) (Action alleging tortious interference with economic relations was subject to three-year statute of limitations period for injuries to persons or property, even though the unlawful interference was caused by defamatory statements); *Wild v. Rarig,* 302 Minn. 419, 234 N.W.2d 775 (1975), *cert. denied,* 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976) (Though six-year statute of limitations is generally applicable to tort of a wrongful interference with business relationships, two-year statute is applicable to cause of action for tortious interference with business relationship arising out of defendant's defamation of plaintiff); *Evans v. Philadelphia Newspapers, Inc.,* 411 Pa.Super. 244, 601 A.2d 330 (1991) (Claim was, in essence, one of defamation, and plaintiff could not circumvent one-year statute of limitations merely by terming claim contractual interference).

██ We recognize, however, that an individual's right to conduct a business or pursue an occupation is a property right. *Louis K. Liggett Co. v. Baldridge,* 278 U.S. 105, 111, 49 S.Ct. 57, 58, 73 L.Ed. 204, 208 (1928), *overruled on another point, North Dakota State Board of Pharmacy v. Snyder's Drug Stores, Inc.,* 414 U.S. 156, 94 S.Ct. 407, 38 L.Ed.2d 379 (1973); *Overstreet, supra; City of Rock Falls v. Chicago Title & Trust Co.,* 13 Ill.App.3d 359, 300 N.E.2d 331 (1973); *Clark v. Figge,* 181 N.W.2d 211, 215–16 (Iowa 1970); *Newark Hardware & Plumbing Supply Co. v. Stove Mfrs. Corp.,* 136 N.J.L. 401, 56 A.2d 605 (1948), *aff'd* 137 N.J.L. 612, 61 A.2d 240 (1948); 45 Am.Jur.2d *Interference* § 65 (1969); 86 C.J.S. *Torts* § 43 (1954). The type of injury alleged in an action for tortious interference with business relationship is damage to one's business or occupation. While the injury upon which the cause of action for tortious interference is based

may have resulted from defamatory statements or writings, the type of interest harmed is not simply to one's reputation but to one's business or occupation.

Moreover, as we previously pointed out, defamation and tortious interference with business relationship are two separate causes of action, the elements of which we set forth in *Crump* and *Torbett,* respectively. While defamation is not a necessary element for a cause of action for tortious interference with business relationship, defamation may, in certain cases, be a part of the interference. As set forth above, one of the elements for a cause of action for tortious interference is "an intentional act of interference by a party outside that relationship or expectancy[.]" The "intentional act of interference" could consist of defamatory statements or writings. Yet, merely because one of the elements of tortious interference could require proof of defamatory statements or writings does not change the cause of action to defamation. The other elements of tortious interference requiring proof of a business relationship and damage to property are unrelated to a defamation claim.

Thus, we conclude that an individual's right to conduct a business or pursue an occupation is a property right. The type of injury alleged in an action for tortious interference with business relationship is damage to one's business or occupation. Therefore, the two-year statute of limitations governing actions for damage to property, set forth under *W.Va.Code,* 55–2–12 [1959], applies to an action for tortious interference with business relationship.

In his complaint, Dr. Garrison has asserted that Thomas Hospital knew that its communication to Memorial Hospital was improper and that its misconduct

> was the proximate cause of the harm or destruction of [his] business relationship with his patients and potential patients, his business relationship and future business relationship with the Family Practice Center of the University of Wyoming and his business relationship and potential future business relationship with Memorial Hospital of Laramie County.

Dr. Garrison has alleged in his complaint that a business relationship existed between

him and the Cheyenne Family Practice Center, that Thomas Hospital intentionally interfered with that business relationship, that he lost his job and was denied hospital privileges because of the actions of Thomas Hospital, and that he has suffered damages as a result. Therefore, because Dr. Garrison has asserted a cause of action for tortious interference with business relationship, his action is not barred by the statute of limitations for a defamation action.[11]

## V

As cross-assignments of error, Thomas Hospital asserts two other grounds for dismissal of the complaint: (1) Dr. Garrison is collaterally estopped from taking positions in this action contrary to the findings of the Wyoming Supreme Court;[12] and (2) Dr. Garrison waived any claim he had against Thomas Hospital in two releases—one in his application to Thomas Hospital and one in his application to Memorial Hospital.

With respect to the assertion that Dr. Garrison waived any claim he had against Thomas Hospital, Dr. Garrison avers that he signed an anticipatory release from liability for Thomas Hospital to communicate truthful and accurate information to other peer review organizations, but that he did not release Thomas Hospital from liability for intentionally communicating inaccurate or misleading information to others. The issue of whether Dr. Garrison waived any claim he had against Thomas Hospital is directly related to the issue of whether Thomas Hospital knowingly gave false or inaccurate information to Memorial Hospital.[13]

If this Court accepts as true Dr. Garrison's assertion that Thomas Hospital gave Memorial Hospital false or inaccurate information, then Thomas Hospital's assertion that Dr. Garrison waived his claims against the hospital by signing two releases would fail. Therefore, the standard of review of an order granting a motion to dismiss requires us to remand this case to the trial court for a more complete development of the record to determine whether or not he waived his claims against Thomas Hospital by signing those releases.

## VI

We emphasize that our holding today is not a final decision on the merits of this case. On remand, Dr. Garrison will have the burden of proving that he entered into an agreement with Thomas Hospital and what the terms of that agreement were. Dr. Garrison will also have to prove that the statements in Dr. Hogshead's letter to Memorial Hospital were false, and that Dr. Hogshead knew the statements were false. Finally, Dr. Garrison will have to prove each of the elements of tortious interference with business relationship.

Thus, for the reasons stated herein, we conclude that the order of the Circuit Court of Kanawha County granting Thomas Hospital's motion to dismiss should be reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

---

11. We note that if Dr. Garrison proves the necessary elements of tortious interference with business relationship stated in *Torbett*, Thomas Hospital may show justification or privilege as a defense.

12. We addressed the first cross-assignment of error raised by *Thomas* in note 5, *supra*.

13. These are factual issues which must be resolved by the jury.