# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

Gregory Scolapio,
Plaintiff Below, Petitioner

vs.)  No. 19-0543 (Monongalia County 17-C-413)

Harrison County Commission,
Albert Marano, individually, and in his
capacity as Sheriff of Harrison County;
Steve Johnson, individually, and in his
capacity as Chief Deputy Sheriff
of Harrison County; Pat McCarty, individually,
and in his capacity as Deputy Sheriff
of Harrison County; and Justin Scott Peck,
individually,
Defendants Below, Respondents

**FILED**
**May 26, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Gregory Scolapio, by counsel Sam H. Harrold, III, appeals the May 9, 2019, order of the Circuit Court of Monongalia County[1] that denied his motion for a new trial following entry of an order granting judgment as a matter of law on petitioner's claims of defamation and civil conspiracy in favor of Respondents Harrison County Commission[2]; Albert Marano, individually, and in his capacity as Sheriff of Harrison County; Steve Johnson and Pat McCarty, individually, and in their capacities as Chief Deputy Sheriffs of Harrison County (hereinafter "the county respondents"); and Respondent Justin Scott Peck. The county respondents, by counsel Tiffany R. Durst and Nathaniel D. Griffith, and Respondent Peck, by counsel Gregory H. Schillace, filed responses in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record

---

[1] This case was originally commenced in the Circuit Court of Harrison County. By agreed order entered on October 23, 2017, venue was transferred to the Circuit Court of Monongalia County.

[2] The Harrison County Sheriff's Department was originally named as a defendant in this case. However, by agreed order entered on October 19, 2017, the Harrison County Commission was substituted in its stead.

1

presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

On November 28, 2016, following the termination from his employment as a law enforcement officer with the Harrison County Sheriff's Department, petitioner[3] filed a complaint against respondents[4] alleging claims of tortious interference with employment, defamation of character, and civil conspiracy.[5] Petitioner's complaint was based upon the filing of a felony criminal complaint against him by Respondent Peck on June 3, 2015. During the course of a June 3, 2015, interview with Sgt. J.P. Branham of the West Virginia State Police, Respondent Peck claimed that petitioner had extorted more than $30,0000 from him in his capacity as a deputy sheriff and in connection with his role as the administrator of the estate of Respondent Peck's mother, Respondent Peck's attorney-in-fact, and adviser to a special needs trust that had been created for the benefit of Respondent Peck.[6] Sgt. Branham advised petitioner of Respondent Peck's allegations on June 8, 2015. Petitioner met with Sgt. Branham on June 23, 2015, to discuss the allegations and denied any wrongdoing. According to petitioner, Respondent Peck later admitted in an August 24, 2015, pre-polygraph interview that Respondent Marano and others had put him up to making the criminal complaint against petitioner, and that, as a result, Sgt. Branham ultimately deemed the allegations to be unfounded. A final report concluding the investigation was issued on March 8, 2016.

Thereafter, on August 31, 2016, Respondent Peck approached petitioner's co-plaintiff and former co-worker, Robert T. Ankrom, at a local gym, and identified Respondents Marano, Johnson, and McCarty as the individuals who put Respondent Peck up to filing the criminal complaint against petitioner. Mr. Ankrom recorded this conversation and testified about it at trial. Petitioner and Mr. Ankrom then filed their civil action on November 28, 2016.[7]

---

[3] Petitioner's co-plaintiff was his former co-worker, Robert T. Ankrom, who had been demoted. He is not a party to this appeal.

[4] The other defendants included Joseph Carbacio, individually, and in his capacity as Administrative Assistant to the Sheriff of Harrison County; and John Does, individually. These defendants are not parties to this appeal.

[5] The circuit court stayed discovery on petitioner's employment-related claim.

[6] In his capacity as the administrator of the estate of Respondent Peck's mother, petitioner filed a medical malpractice lawsuit in connection with her death. The lawsuit was settled and the net settlement proceeds were placed in a special needs trust established for the benefit of Respondent Peck, who, at the time, was incarcerated.

[7] Petitioner filed an amended complaint on December 20, 2016, which appears to have amended petitioner's prayer for relief. Respondent Peck filed a counterclaim against petitioner in which he alleged that petitioner breached his fiduciary duty to Respondent Peck, abused his position, and converted money owned by Respondent Peck, all in connection with petitioner's role

Prior to trial, on October 31, 2018, the county respondents filed a motion for partial summary judgment on the ground that petitioner's defamation claim had not been filed within the applicable one-year statute of limitations and was, therefore, time-barred. *See Garrison v. Herbert J. Thomas Mem'l Hosp. Ass'n,* 190 W. Va. 214, 221, 438 S.E.2d 6, 13 (1993) ("An action for defamation is subject to a one-year statute of limitation[.]"). Further, because the civil conspiracy claim was derivative of the defamation claim, it was also governed by the same one-year statute of limitations and, thus, also time-barred. *See* Syl. Pt. 10, *Dunn v. Rockwell*, 225 W. Va. 43, 689 S.E.2d 255 (2009) ("The statute of limitation for a civil conspiracy claim is determined by the nature of the underlying conduct on which the claim for conspiracy is based."). The circuit court denied the county respondents' motion for partial summary judgment.

Trial on petitioners' defamation and civil conspiracy claims commenced on December 13, 2018. Upon the close of petitioner's case-in-chief, the county respondents moved for judgment as a matter of law on the ground that petitioner's defamation and civil conspiracy claims were time-barred based upon petitioner's own testimony at trial. Specifically, petitioner testified that he first learned of the West Virginia State Police investigation into the allegations Respondent Peck made against him on June 8, 2015, or, at the very latest, on June 23, 2015, when Sgt. Branham interviewed petitioner about them. Given these facts, the county respondents argued, the one-year statute of limitations applicable to petitioner's defamation claim and his derivative civil conspiracy claim expired, at the very latest, on June 23, 2016. Because petitioner did not file his complaint until November 28, 2016, his claims were time-barred. Respondent Peck joined in the county respondents' motion. The circuit court granted respondents' motion for judgment as a matter of law.

Petitioner thereafter filed a motion for a new trial pursuant to Rule 59 of the West Virginia Rules of Civil Procedure. Following a hearing, the circuit court denied petitioner's motion by order entered on May 9, 2019. It is from this order that petitioner now appeals.

> "[T]he ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, [and] the trial court's ruling will be reversed on appeal [only] when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syl. pt. 4, in part, *Sanders v. Georgia–Pacific Corp.,* 159 W.Va. 621, 225 S.E.2d 218 (1976).

Syl. Pt. 2, *Estep v. Mike Ferrell Ford Lincoln-Mercury, Inc.*, 223 W. Va. 209, 672 S.E.2d 345 (2008). As we have previously held in connection with our review of an order denying a motion for a new trial, "'[t]his Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed de novo.' Syl. Pt. 4, *Burgess v. Porterfield,* 196 W.Va.

---

as the administrator of the estate of Respondent Peck's mother, Respondent Peck's attorney-in-fact, and advisor to the special needs trust. The circuit court ultimately entered an order granting judgment on the pleadings in favor of petitioner on the ground that Respondent Peck's counterclaims were time barred. Respondent Peck has appealed that order to this Court in *Peck v. Scolapio*, No. 19-0165.

178, 469 S.E.2d 114 (1996)." *Gum v. Dudley*, 202 W. Va. 477, 482, 505 S.E.2d 391, 396 (1997).

Petitioner raises two assignments of error. Because they are related, they will be addressed together. Petitioner's over-arching argument is that the circuit court erred in concluding that his defamation claim was barred by the one-year statute of limitations. In syllabus point 5 of *Dunn*, this Court instructed as follows:

> A five-step analysis should be applied to determine whether a cause of action is time-barred. First, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in Syllabus Point 4 of *Gaither v. City Hosp., Inc.,* 199 W.Va. 706, 487 S.E.2d 901 (1997). Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact.

225 W. Va. at 46, 689 S.E.2d at 258.

First, petitioner argues that the circuit court erred in its application of the second step of the *Dunn* analysis—that is, in identifying when the requisite elements of his defamation claim occurred. This Court has held that

> [t]he essential elements for a successful defamation action by a private individual are (1) defamatory statements; (2) a nonprivileged communication to a third party;[8] (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury.

Syl. Pt. 1, *Crump v. Beckley Newspapers, Inc.*, 173 W. Va. 699, 320 S.E.2d 70 (1983). (Footnote added).

On appeal, petitioner argues that the circuit court erred in concluding that, when Respondent Peck met with Sgt. Branham on June 3, 2015, and communicated "the allegations claimed by [petitioner] to be defamatory statements[,]" Peck's statements satisfied the requirement

---

[8] "[A] nonprivileged communication to a third party" is sometimes referred to as "publication." *See Crain v. Lightner*, 178 W. Va. 765, 772, 364 S.E.2d 778, 785 (1987).

that they be "a nonprivileged communication to a third party." The circuit court committed further error, petitioner argues, in concluding that "[a]t the outer most limit, . . . the elements for the defamation claim occurred on June 23, 2015[,] when Sgt. Branham conducted an interview of [petitioner]." Petitioner argues that, rather, Respondent Peck's defamatory statements to Sgt. Branham fell within "a qualified privilege" at the time they were made and, therefore, did not satisfy the elements of a defamation claim. *See* Syl. Pt. 9, in part, *Belcher v. Wal-Mart Stores, Inc.*, 211 W. Va. 712, 568 S.E.2d 19 (2002) ("'A qualified privilege exists when a person publishes a statement in good faith about a subject in which he has an interest or duty and limits the publication of the statement to those persons who have a legitimate interest in the subject matter; however, a bad motive will defeat a qualified privilege defense.' Syl. Pt. 4, *Dzinglski v. Weirton Steel Corp.*, 191 W.Va. 278, 445 S.E.2d 219 (1994).") Petitioner contends that he was not aware that Respondent Peck's defamatory statements to law enforcement were "nonprivileged" until he received a copy of the final investigation report on March 8, 2016, which revealed that the county respondents had put Respondent Peck up to filing the criminal complaint against him and that Respondent Peck had thus made the statements with a "bad motive," defeating the "qualified privilege." As a result, petitioner argues, because he was not aware that the elements of a defamation claim against respondents were satisfied until March 8, 2016, the statute of limitations did not begin to run until that time. Thus, according to petitioner, his complaint, which was filed on November 28, 2016, was, therefore, timely filed.

As previously noted, upon the close of petitioner's case-in-chief, respondents moved for a judgment as a matter of law on the ground that petitioner's defamation and civil conspiracy claims were time-barred based upon petitioner's own testimony at trial. In ruling upon the motion at a subsequent hearing, the circuit court observed:

> So June the 3rd was the first date that Mr. Peck met with Sergeant Branham and communicated to him the allegations that are claimed by the plaintiff to be defamatory statements. Publication, which even if we accept defamation per se, I think is still a required element of defamation, but I suppose making those statements to Sergeant Branham would constitute publication. Sergeant Branham was a third party. . . . So all of the elements of the claim of defamation occurred . . . . I suppose at the latest June 23rd when Sergeant Branham met with the plaintiff.

The record reveals that petitioner failed to then dispute this finding or argue that Respondent Peck's allegedly defamatory statements about him to Sgt. Branham were subject to "a qualified privilege" and, therefore, insufficient to satisfy the elements of a defamation claim such that the statute of limitations did not begin to run when petitioner became aware of them. This Court has repeatedly explained that

> "in general, the law ministers to the vigilant, not to those who sleep on their rights. . . . When a litigant deems himself or herself aggrieved by what he or she considers to be an important occurrence in the course of a trial or an erroneous ruling by a trial court, he or she ordinarily must object then and there or forfeit any right to complain at a later time. The pedigree for this rule is of ancient vintage, and it is premised on the notion that calling an error to the trial court's attention affords an opportunity to correct the problem before irreparable harm occurs. . . . In the

end, the contemporaneous objection requirement serves an important purpose in promoting the balanced and orderly functioning of our adversarial system of justice.

*State v. Lively*, 226 W.Va. 81, 92-93, 697 S.E.2d 117, 128-29 (2010) (quoting *State v. LaRock*, 196 W. Va. 294, 316, 470 S.E.2d 613, 635 (1996). *See Hanlon v. Logan Cty Bd. of Educ.,* 201 W. Va. 305, 315, 496 S.E.2d 447, 457 (1997) ("Long standing case law and procedural requirements in this State mandate that a party must alert a tribunal as to perceived defects at the time such defects occur in order to preserve the alleged error for appeal.").

Although petitioner eventually raised in his Rule 59 motion for a new trial the argument that the "nonprivileged communication" element of his defamation claim was not satisfied for purposes of the running of the statute of limitations, it is clear that he could have raised it at the earlier proceeding during which the issue was being considered thereby giving the circuit court the opportunity to consider it. *See Mey v. Pep Boys-Manny, Moe & Jack*, 228 W. Va. 48, 56, 717 S.E.2d 235, 243 (2011) (stating that "[a] motion under Rule 59(e) is not appropriate for presenting new legal arguments, factual contentions, or claims that could have previously been argued"). Thus, we find that petitioner waived this argument.

Petitioner also argues that the circuit court erred in its application of the third step of the *Dunn* analysis—that is, in "determin[ing] when the statute of limitation began to run by determining when [petitioner] knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in *Gaither.*" In syllabus point 4 of *Gaither*, we held:

> In tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.

199 W. Va. at 708, 487 S.E.2d at 903. Petitioner argues that the circuit court erred in finding that June 23, 2015, the date that Sgt. Branham advised petitioner of the substance of Respondent Peck's defamatory allegations about him, was "the last possible date on which [petitioner] knew or by the exercise of reasonable diligence should have known of the elements of the defamation claim." Petitioner argues that he could not have known that he had a claim for defamation until he received Sgt. Branham's final investigation report on March 8, 2016, which was less than one year before petitioner's November 28, 2016, complaint was filed and, therefore, within the limitations period. According to petitioner, the determination of when he knew, or by the exercise of reasonable diligence, should have known that he had a defamation claim against respondents is a factual question that should have been considered by the jury. We find no error.

At trial, petitioner testified as follows:

Q. And [Sgt. Branham] contacted you on June the 8th to set up an interview; right?

6

A. Correct.

Q. So even though you hadn't given a full-blown interview, you knew as of June the 8th, 2015, that Justin Peck had made a criminal complaint against you that you believed to be false; is that correct?

A. Correct.

Q. And then again on June 23rd of 2015, when you met with Sergeant Branham, that information was simply confirmed that Justin was making this complaint. It was a felony criminal complaint, and then you told your side of the story?

A. Correct.

Q. So would you agree with me, Mr. Scolapio, that you did not need a copy of the [S]tate [P]olice report to know that Justin Peck had made a defamatory—what you thought was a false and defamatory statement against you would [sic] when he filed the criminal complaint? You didn't need the police report to tell you that. Sergeant Branham had already told you that on June the 8th; right?

A. Correct

. . . .

Q. You still knew on June 8th of 2015 that Justin Peck, whether he used the word extorted or not, you still knew that Justin Peck was telling the [S]tate [P]olice that you had threatened him, to take him out in the yard and kick his ass if he didn't sign that check. You knew that; didn't you?

A. I knew of the complaint against me, yes, ma'am.

Q. Okay. And you knew, based on what you told this jury, that that was false, as of June 8th; right?

A. Yes. Because I didn't do that.

Q. You didn't need the [S]tate [P]olice—a copy of the report for you to know that Justin Peck had made a statement against you that you thought was false and defamatory; did you? You knew it because Sergeant Branham told you on June 8th, and then again on June 23rd; right?

A. True. He told me on those two dates, and then when I got a copy of the report, it listed that Justin indicated that he had been put up to making the complaint, and everything else fell in line.

7

Q. But you still knew what the substance of the complaint was?

A. Yes, ma'am.

Q. And you knew that as of June 8, 2015?

A. Yes, ma'am.

Clearly, petitioner's own trial testimony supports the circuit court's finding that, no later than June 23, 2015, petitioner knew, or by the exercise of reasonable diligence, should have known that Respondent Peck had made statements about him to Sgt. Branham that petitioner believed to be defamatory. Thus, the circuit court did not err in concluding that, on that date, at the very latest, petitioner knew, or by the exercise of reasonable diligence, should have known "of the elements of the defamation claim." Therefore, we find that the circuit court did not err in denying petitioner's motion for a new trial.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 26, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

**NOT PARTICIPATING:**

Justice Margaret L. Workman