**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**


**Gregory S. Moore, O.D.,**
**Plaintiff Below, Petitioner**

**vs.)  No. 22-0187** (Kanawha County 16-C-1817)

**Lawrence M. Minardi, M.D., individually, and**
**Minardi Eye Center, Inc., a West Virginia**
**Corporation,**
**Defendants Below, Respondents**


## MEMORANDUM DECISION


Petitioner Gregory S. Moore, O.D. ("Dr. Moore") appeals the circuit court's order granting summary judgment to Respondents Lawrence M. Minardi, M.D. ("Dr. Minardi") and Minardi Eye Center, Inc. on the basis that the complaint is barred under the applicable statute of limitations.[1] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

Dr. Moore, a board-certified optometrist, was the managing member and sole owner of West Virginia Laser Eye Center, LLC ("WVLEC"). According to Dr. Moore's complaint, this business was formed to allow him to lawfully associate with and manage ophthalmologists to perform LASIK and cataract surgeries. Dr. Minardi is an ophthalmologist and is the owner of Minardi Eye Center, Inc. At all relevant times, respondents treated patients with eye diseases and routinely performed LASIK and cataract surgeries. Following a change in West Virginia law that expanded the scope of permissive optometric practice in 2010, which Dr. Minardi opposed, Dr. Minardi submitted complaints to the West Virginia Board of Medicine ("WVBOM") against Dr. Moore and two ophthalmologists associated with WVLEC—both prior to 2013. The WVBOM did not find any wrongdoing on the part of Dr. Moore or the associated ophthalmologists so no actions were taken against them by the WVBOM. In 2013 and 2015, Dr. Minardi authored screening certificates of merit against Dr. Moore, the WVLEC, and/or ophthalmologists associated with WVLEC. The certificate completed in 2013 was part of litigation that was ultimately dismissed by a circuit court. The certificate completed in 2015 related to a patient who did not file suit against Dr. Moore or those associated with him. Also in 2015, Dr. Minardi sent a letter to WVBOM

---

[1]Petitioner is represented by Robert J. D'Anniballe, Jr. and Anthony S. Caliguire, and respondents are represented by Edward C. Martin, Jason A. Proctor, and Kiersan S. Lockard.

regarding Dr. Moore in response to a complaint filed by Dr. Moore against Dr. Minardi.

Dr. Moore filed suit against respondents on December 6, 2016, alleging that respondents tortiously interfered with business relations and expectancies and the pursuit of occupation. Key to Dr. Moore's claim are his professional relationships and affiliations with several ophthalmologists, primarily Dr. Darrell Reisner. Dr. Reisner entered into an oral agreement with WVLEC in 2008 and a written agreement for practice management services in 2009. Under the terms of that agreement, it was to end in 2012. However, Dr. Reisner continued performing surgeries at WVLEC through at least part of 2013. Dr. Moore claimed Dr. Reisner ceased his affiliation with WVLEC due to Dr. Minardi's filing of complaints against Dr. Moore and those affiliated with WVLEC, including Dr. Reisner. Dr. Moore spoke to another ophthalmologist about performing surgeries at WVLEC, but that doctor chose not to do so.[2] Dr. Moore generally alleged that WVLEC and a later-opened business suffered due to Dr. Minardi's actions in filing these complaints and authoring the screening certificates of merit. The circuit court found that the two-year statute of limitations set forth in West Virginia Code § 55-2-12 applied to Dr. Moore's claims and that the claims are time-barred.

On appeal, Dr. Moore asserts that the circuit court erroneously granted respondents' motion for summary judgment, arguing that the suit was timely filed because respondents were committing a continuous tort. As this Court has consistently stated, "'A circuit court's entry of summary judgment is reviewed *de novo*.' Syllabus Point 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994)." Syl. Pt. 1, *Goodman v. Auton*, -- W. Va. --, 880 S.E.2d 57 (2022).

A five-step analysis controls the question of whether Dr. Moore's tortious interference claim against Dr. Minardi is time barred:

> First, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in Syllabus Point 4 of *Gaither v. City Hosp., Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997). Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Only the first step is purely a question of law; the resolution of steps two through five will generally

---

[2] In addition, Dr. Moore purchased the practice of Dr. Tully Roisman in 2009, and Dr. Roisman continued with the practice through a transition period. However, that relationship resulted in Dr. Roisman filing suit against Dr. Moore and/or WVLEC for nonpayment of rent under their agreement. Thus, it appears that that relationship ended for reasons unrelated to respondents.

2

involve questions of material fact that will need to be resolved by the trier of fact.

Syl. Pt. 5, in part, *Dunn v. Rockwell*, 225 W. Va. 43, 689 S.E.2d 255 (2009).

Regarding step one, it is undisputed that Dr. Moore's claims are subject to a two-year statute of limitation. W. Va. Code § 55-2-12. Step two requires this Court to assess when the elements of Mr. Moore's claim for tortious interference occurred. The elements of a claim of tortious interference are:

(1) existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages. If a plaintiff makes a prima facie case, a defendant may prove justification or privilege, affirmative defenses. Defendants are not liable for interference that is negligent rather than intentional, or if they show defenses of legitimate competition between plaintiff and themselves, their financial interest in the induced party's business, their responsibility for another's welfare, their intention to influence another's business policies in which they have an interest, their giving of honest, truthful requested advice, or other factors that show the interference was proper." Syl. pt. 2, *Torbett v. Wheeling Dollar Savings & Trust Co.,* 173 W.Va. 210, 314 S.E.2d 166 (1983).

Syl. Pt. 4, *Garrison v. Herbert J. Thomas Memorial Hosp. Ass'n*, 190 W. Va. 214, 438 S.E.2d 6 (1993).

Comparing the facts adduced at summary judgment to those elements, we see that the circuit court did not err when it concluded that the elements of Mr. Moore's claim for tortious interference occurred (if at all) before January of 2014. While Dr. Moore points to the 2015 screening certificate of merit in support of his argument that respondents' tortious conduct continued through 2015, no litigation was filed related to the patient who was the subject of that certificate. Further, the 2015 certificate had no bearing on Dr. Reisner's decision to end his affiliation with Dr. Moore and WVLEC in 2013. Therefore, it is unclear how Dr. Moore or his business was harmed by this certificate.

As stated above, Dr. Moore's primary theory is that Dr. Minardi's actions caused Dr. Reiser to disassociate from WVLEC. While Dr. Moore blames Dr. Minardi for Dr. Reisner's decision to discontinue his professional affiliation with Dr. Moore and WVLEC, Dr. Moore ignores Dr. Reisner's deposition testimony that WVLEC's patient volume declined for other reasons as well. Specifically, Dr. Reisner testified that some referring doctors indicated they would not refer all of their patients to WVLEC due to their displeasure with the scant amount of time Dr. Reisner spent at WVLEC, as he did not reside in West Virginia and was at WVLEC approximately five to seven days per month. According to Dr. Reisner, those referring doctors also expressed concern about Dr. Minardi's WVBOM complaints against Dr. Moore and Dr. Reisner. Dr. Reisner further testified that while Dr. Minardi's complaints contributed to his decision to cease practicing at WVLEC, that decision was also due to the growth of his practice in Virginia, which required him to be present there. Dr. Reisner confirmed that he made the decision to leave in 2013, he

3

implemented the decision in 2013, and he had not spoken to Dr. Moore about returning at any point after 2013.

In addition, Dr. Minardi's December of 2015 letter to the WVBOM was in response to a complaint filed by Dr. Moore against Dr. Minardi and does not appear to contain allegations against Dr. Moore that Dr. Minardi had not made before the end of 2013, under the facts of this case, Dr. Moore cannot rely upon that letter to extend the statute of limitations. Thus, Dr. Moore knew or should have known no later than the end of 2013 that the statute of limitations had begun to run on his tortious interference claims against respondents. Further, with regard to the fourth *Dunn* factor, fraudulent concealment, Dr. Moore does not allege that respondents concealed facts related to his claims. Finally, Dr. Moore does not contend that the statute of limitation period was tolled.

We find no merit to Dr. Moore's assertion that respondents committed a continuing tort. "Where a tort involves a continuing or repeated injury, the cause of action accrues at and the statute of limitations begins to run from the date of the last injury or when the tortious overt acts or omissions cease." Syl. Pt. 11, *Graham v. Beverage*, 211 W. Va. 466, 566 S.E.2d 603 (2002). As set forth above, if respondents committed any tortious conduct, that conduct occurred prior to the end of 2013. Additionally, as we recently reiterated, "'the concept of a continuing tort requires the showing of repetitious, *wrongful* conduct . . . [m]oreover a wrongful act with consequential damages is not a continuing tort.' *Ricottilli v. Summersville Mem. Hosp.*, 188 W. Va. 674, 677, 425 S.E.2d 629, 632 (1992)." *Reilley v. Bd. of Educ. of Cnty. of Marshall*, 246 W. Va. 531, 540, 874 S.E.2d 333, 342 (2022) (emphasis added). As set forth herein, the actual conduct complained of occurred prior to the end of 2013, with the exception of preparation of the 2015 screening certificate of merit (which was not followed by a lawsuit) and transmission of the 2015 letter (which did not contain allegations against Dr. Moore that Dr. Minardi had not made before the end of 2013). Consequently, Dr. Moore has not established that the 2015 conduct was wrongful such that it would trigger the continuing tort doctrine. Thus, for the reasons set forth herein, we find that the circuit court did not err in determining that Dr. Moore's claims were time-barred and granting respondents' motion for summary judgment.

Affirmed.

**ISSUED:** April 5, 2023

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

4